NATHAN BICKNELL *v.* GEORGE BICKNELL, STEPHEN HALE AND
ISAAC J. BOWEN.

[IN CHANCERY.]

*Equitable mortgage by deposit of title deeds.    Chancery.*

*Dubitatur,* whether the deposit of the title deeds of an estate, as a security for
a loan or advance of money, constitutes a valid equitable mortgage upon the
estate, under the law of this State.

B. purchased and took a deed of land, and H. paid part of the purchase money,
under an agreement between them that he was also to furnish materials, etc.
for building a shop thereon for B., and that H.'s advances were to be secured,
after the completion of the shop, by a mortgage of the land. Upon receiv-
ing his deed B. delivered it to H. without causing it to be recorded to be held
by H., as security for his advances, until a mortgage should be made. Sub-
sequently, and before the completion of the shop, B. conveyed the land for
a valuable consideration to the orator (who purchased with notice of the
agreement between B. and H., and of the deposit of the deed with the latter),
after which no mortgage was made to H., who still retained the deed to B.,
and did not put it on record; *Held,* that the orator was entitled to a decree
that B. and H. should cause the deed to B. to be recorded in the town clerk's
office of the town where the land was situated.

APPEAL from the decree of the court of chancery. The bill
set forth that about June 1st, 1844, the defendant, George Bick-
nell, purchased and received a deed of a certain piece of land in
Underhill, from the defendant Bowen; that George Bicknell was
then owing the orator seventy-five dollars; that after the execution
and delivery of this deed from Bowen to George Bicknell, the
orator commenced a suit against the latter to recover this debt,
and therein attached the land so conveyed, and finally recovered
a judgment against Bicknell; that in payment of this judgment,
and before the lien created by this attachment had expired, George
Bicknell, on the 14th of April, 1846, executed and delivered to
the orator a quit claim deed of the premises, and the orator there-
upon discharged the judgment; that soon afterwards the orator
learned that the deed from Bowen to George Bicknell was not
recorded in the town clerk's office in Underhill; that as soon as
he discovered the fact he requested George Bicknell either to place
this deed upon record, or to allow the orator to do so, and that
he refused, giving as a reason that he had deposited the deed with

the defendant Hale, as security for an indebtedness from him to Hale, and that Hale would not surrender the deed to him until this indebtedness was paid; and that the orator thereupon requested Hale to place the deed upon record, or allow the orator to do so, but that Hale, though he admitted having the deed in his possession, refused to do as the orator requested. The bill prayed for a decree that the defendants, George Bicknell and Hale, should cause the deed in question to be recorded in the town clerk's office in Underhill, and also that they should be perpetually enjoined from setting up any claim, either at law or in equity, to the premises in question, and that Bowen should execute to the orator a quit claim deed of the same land.

The defendant, George Bicknell, answered that before the conveyance of the land in question from him to the orator, he deposited the deed from Bowen to him with the defendant Hale, so that the latter might draw up therefrom a mortgage of the same land to him, to secure a debt then due to him from George Bicknell, amounting to about seventy-five dollars, but that Hale had never drawn up such mortgage, or returned the original deed, though often requested so to do; and that at the time of the execution of the deed from George Bicknell to the orator, the latter was fully informed that the deed from Bowen was not in George Bicknell's possession, but had been left with Hale for the purpose above mentioned.

The defendant Hale answered that in 1844, previous to the conveyance from Bowen to George Bicknell, the latter applied to Hale to furnish him with sufficient money to buy the land in question, which he was then intending to purchase, and materials for the erection of a shop thereon, and promised to execute to Hale a mortgage of the land and shop, if he would do so; that he assented to this request, and that thereupon the following written contract was executed by George Bicknell and delivered to him, viz:

"UNDERHILL, June 1, 1844.

This instrument is to show that I have agreed with Stephen Hale for boards, shingles, nails and glass, for building use, and also work and some articles of provisions, on the following conditions, viz:

for the property said Hale shall turn in I am to give him my note payable in three years from this date, with interest annually, and give to said Hale a mortgage on the shop to secure said note. And the materials are not to become my property, nor be at my disposal till secured by mortgage, as above described, and the work and all the materials that I shall put into the shop, are and shall be a pledge to said Hale that I will perform the conditions of this instrument.

(Signed)        GEORGE BICKNELL;"

that under this contract he furnished George Bicknell with materials, etc., to to the value of ninety dollars; that on the 14th of October, 1844, he paid Bowen a portion of the purchase money of the land, George Bicknell paying the balance; that Bowen then executed a deed of the land to George Bicknell, which was immediately delivered by the latter to Hale, to be held as security for the advances made and to be made to him under the contract; that a mortgage was not then made because the shop was not then completed, nor the amount of the necessary advances known; that the shop has never been finished; that Hale still held the deed, and that it had never been recorded; that Hale was unwilling, after the orator had attached the land on his debt against George Bicknell, to surrender the deed to be recorded, or to take a mortgage, for fear that he might thereby prejudice his own lien upon the premises; and that before the orator attached the premises he was fully informed of all the facts relating to Hale's contract with George Bicknell, and his advances thereunder, and his equitable claim to the property as security therefor.

These answers were both traversed by the orator, who also took George Bicknell's testimony to sustain the allegations of the bill. Under the decision of the court, however, it is unnecessary to recite this testimony. No testimony was taken by the defendants. BENNETT, Chancellor decreed that, as to the defendant Bowen, the bill should be dismissed with costs, and that the defendants, Bicknell and Hale, should cause the deed from Bowen to George Bicknell, mentioned in the bill, to be put on record in the town clerk's office in Underhill, within sixty days from the date of the decree. From this decree the defendant Hale appealed.

*E. R. Hard* and *J. French*, for the orator.

1. Admitting (which we do not) that Hale has an equitable lien upon the premises, which would be enforced in equity as against the orator, still, he is not thereby justified in utterly defeating the rights of the orator in the land, by refusing to have the deed recorded.

For by the conveyance to the orator he became invested with a legal and equitable interest, at least an equity of redemption in the land, and the right to have his interest, whatever it may be, appear on the record. Hale has no right, even if he has a prior lien to the land, to impair or jeopardize the orator's rights by withholding the deed, especially as the recording of the deed can not in equity affect any pre-existing rights between Hale and the orator.

2. If Hale's answer concerning the contract can be treated as responsive to the bill, and as evidence of the facts therein stated (which we deny), it appears from the answer itself that the contract is in writing, and consequently parol proof is not admissible to show its terms; but the original writing should itself be produced. This Hale has neglected to do.

*Frederick G. Hill*, for the defendant Hale.

The prayer of the bill ought not to be granted, because it seeks to impair the lien or pledge which Hale has upon the land in question, by the deposit of the title deed with him as security for his advances, and which amounts to an equitable mortgage; 4 Kent's Com. (4 Ed.) 150; 5 U. S. Cond. Rep. 233.

This lien will be enforced in a court of equity against the mortgagor and all who claim under him with notice, either actual or constructive, of such deposit; 4 Kent's Com. 150–151; *Russell* v. *Russell*, 1 Lead. Cases in Equity 499 (440) *et seq.;* 3 Powell on Mortgages 1058, *a.; Fitzjames* v. *Fitzjames*, Rep. Temp. Finch; *Jackson* v. *Dubois*, 4 Johns, 216; *Head* v. *Egerton*, 3 P. Wms. 280.

POLAND, J. The doctrine that the deposit of the title deeds of an estate, as a security for a loan or advance of money, constitutes an equitable mortgage upon the estate, seems to be firmly

established in England by many decisions, though not without very serious opposition from Lord ELDON, Sir WILLIAM GRANT, and other eminent judges.

It was very justly objected to it by Lord ELDON, that it was in fact allowing a party to make a mortgage by parol, and so virtually repealing that section of the statute of frauds requiring all contracts for the sale of lands, or any interest therein to be in writing. But notwithstanding these objections, the law in England seems to be settled in favor of equitable mortgages, by the mere deposit of title deeds.

It is manifest enough, that under the system of registration of all conveyances of land which obtains so universally in this country, there is far less propriety in holding that a valid mortgage may be created by the mere deposit of title deeds than in England, where formerly at least, and when this doctrine was established there, the possession of the title deeds was the appropriate, if not the only evidence of the owner's title, and necessary for the assertion and maintenance thereof. Under our registry system, the mere possession of the title deeds is of no practical importance or advantage to the owner of the estate, nor in any material degree essential to the maintenance or defence of his title, nor are they regarged as the usual or necessary insignia of title by purchasers or incumbrancers of the estate, but all inquiries and examinations as to title are made at the proper office for the record of the title, and the owners of estates do not regard the security and permanence of their titles as depending mainly upon their preserving and keeping in possession the title deeds, but in having them enrolled upon the proper record.

Hence it is apparent that the great weight and consequence attached in England to the possession of the title deeds can have properly no such application here.

In this country there seems not as yet to be any settled course of decision upon this subject. In several of the States, especially those which early adopted the doctrines of the English court of chancery with a separate chancery jurisdiction, the English doctrine of creating mortgages by the mere deposit of title deeds, has been adopted. This is true of New York and South Carolina.

In some other States the English doctrine on this subject has

been wholly rejected, not only as being contrary to the statute of frauds, but as being wholly unnecessary under, if not incompatible with, our registry system. This is the case in Pennsylvania and Kentucky.

We are not aware that the subject has ever been agitated before the tribunals of this State, and there has not, to our knowledge, ever been an attempt before, to create a lien upon real estate by depositing the title deeds. We certainly are not now prepared to say this mode of creating an incumbrance is valid by the law of the State, nor do we feel called upon in the present case to decide the question at all in order to dispose of this appeal. .

The deed of the premises in question, from Bowen to George Bicknell, being duly executed and delivered between the parties, invested George Bicknell with the legal title in fee, and as between all persons claiming under him, it was immaterial whether the deed was ever recorded or not; it neither made his title better nor worse.

Now, granting to the defendant Hale all that he claims, both in fact and in law, from the transactions between himself and George Bicknell, he had acquired an equitable mortgage upon the premises to secure the advances he had made to George Bicknell to pay for the land and to erect the building thereon. The legal title remained wholly in Bicknell, and if Hale had an equitable mortgage which he could enforce, still, Bicknell owned the equity of redemption, which he might properly convey to the orator, even if the orator had notice of the existence of Hale's equitable mortgage, so that the title he took would be subservient to it.

In this view, the legal title passed to the plaintiff, subject to the equitable mortgage of Hale, both claiming title from George Bicknell, but Hale had possession of the deed to George Bicknell, and the same was not recorded.

It might admit of doubt upon the proof in the case whether the deed from George Bicknell to Hale was deposited as security for the advances Hale made, or whether it was delivered over merely to have a mortgage made from it, but we do not regard it as material to the decision which way it was. There was no agreement or contract that the deed should not be recorded, and there

not being any, we think any person, who had become the owner of the title or any part of it from George Bicknell, had the right to claim the deed to be recorded so as to show the title into George Bicknell, under whom both claimed. Upon the record the title still appeared to be in Bowen, and the estate might be in danger from attachments by his creditors, or by sale from him to some *bona fide* purchaser, without notice; at least, these dangers appear just as formidable as those urged by the defendant Hale, why he should not be required to have the deed recorded, and thus show the legal title on the record, as it is in fact, in the plaintiff. Nor is it apparent to us how this can in any manner affect any rights between the plaintiff and Hale, or prevent Hale from enforcing his claim upon the premises against the plaintiff, provided he has any valid claim.

There is another ground on which we think the decree of the chancellor might be supported. The defendant Hale, in his answer, states the contract between him and George Bicknell to be in writing, and professes to set it out. The answer is traversed, which of course throws upon him the burden of proving the contract. Being in writing it could only be proved by production, or if lost, by proving its contents. It is not produced or proved in any manner whatever, and it does not appear to us that there is any proper proof of the contract on which Hale bases his claim to hold the deed, or to establish his interest in the premises.

The decree of the chancellor is affirmed with the costs in this court, and remanded to the court of chancery to be enforced.